MoIlvaine, J.
It is essential to the right of the Western Union Telegraph Company to the relief granted in the court below, that it acquired under the contract an exclusive right to the-business of general telegraph correspondence on the line of poles described in the contract, except as therein expressly reserved to the railroad company, to wit: the local business. We assume that the parties to this action have sue *29 ceeded to the rights and obligations of the original parties to the contract. "What, then, is the true construction of the contract ? "What rights were granted by the railroad company to the telegraph company % By the terms of the contract, the answer is, “ The privilege of putting up and maintaining a telegraph wire ‘for general telegraphic correspondence’ on the line of telegraph posts” along the line of the railroad; and “ liberty to establish and maintain telegraph stations at Cincinnati and Marietta, and at such other points along said line as they may think proper, but all local telegraph business on said line and the charges therefor shall belong exclusively to the party of the first part, it being hereby understood and agreed that the party .of the second part shall be entitled only to the business of sending such messages as ma/y he recei/oed at any of their stations on said line, destined for stations on any lateral or other telegraph line connecting with the said Marietta and Cincinnati line at points where said pa/rty of the second part may ham stations ; or such messages as may be received from any lateral or other telegraph line connecting with said Marietta and Cincinnati line at points where said party of the second pa/rt may ham stations, destined for any of the stations of said party of the second part on their said line or on any lateral or other line connecting with said Marietta and Cincinnati line at points where said party of the second part have stations.” The contract also contains a provision for prorating, as follows:
For all messages that may be received by the party of the first part at their stations to be re-telegraphed at stations of the party of the second part to stations on ¿any lateral or other line connecting as aforesaid, and for all messages that may be received at any of their stations by said party of the second part, from stations on lateral or other lines connecting as aforesaid, destined for and that may be re-telegraphed by the party of the second part to points on said line where the party of the second part have no stations, the party of the first part shall be entitled to their proportion of the charge for such messages corresponding to the distance such message may pass upon their line.”
*30 The plain import of these stipulations is not modified by any other provision in the contract; and it appears to us, that no exclusive light to the telegraphic business over this line, even outside of the local business and such as was agreed to be prorated, was granted to the telegraph company.
By “ telegraph stations” which the telegraph company has the liberty to establish and maintain at “ points” along the line of the road, we understand is meant ordinary offices for the business of telegraphy at cities or villages along the line of the road; but the grant of this liberty did not exclude the right of the railroad company, either directly or indirectly, to establish and maintain like offices in the same cities and villages. It will be observed, that the telegraph company was not bound to establish stations at all points; nor are we advised as to their action under the privilege thus granted.
Now, it must be further observed, that as to the business of sending messages, other than local business, the telegraph company is limited to “ such messages as may be received at any of their stations,” so' that the railroad company, or any other person authorized by it, may compete for messages, at any city or village, to be transmitted on this line of poles, and on any wire other than those put up by the telegraph company, without interfering with the privilege granted to it. And again, messages received at an office of the railroad company, though the telegraph company may have an office at the place, to be forwarded over other lines of telegraph from points where the telegraph company has no office, are wholly unprovided for by the agreement; and in such business, the telegraph company certainly cannot claim any interest.
As to the “ local business,” the whole of which was reserved by the railroad company, and its interest in the class of business to be re-telegraphed as between the parties, and for which the compensation was to be divided ratably between the parties, as well as the business left open to competition, and that which was not provided for in the contract, we can find no objection in the contract against the right of the railroad company to transfer the same to a third person, or to its right to place an additional wire upon its line of poles, or to authorize another to *31 do so, for the purpose of transmitting such messages. It is reasonable to assume that such a right was within the contemplation of the parties; and it is quite sure that no stipulation was made to prevent its exercise.
Inasmuch, therefore, as the right of the plaintiff below, to the injunction prayed for, rests on the ground that it had ae-1 quired the right to the sole use of the wires upon this line of poles for -transmission of public or general telegraph correspondence, except local business, and as that claim cannot be maintained by a just construction of the contract, it follows, that the judgment below must be reversed.
Another view of the case leads to the same result. Neither the Marietta and Cincinnati Railroad Company, nor the plaintiff in error, ever had, or have the capacity to engage in the telegraph business for the public generally, whether local or general in its character. The only extent to w'hich either of them could engage in the business of telegraphy was such as. might be necessary or convenient to the management of the railroad and” its business. For this purpose only can a railroad company in this state erect and maintain a line of telegraph poles and wires. True, having constructed such line for such use, it is competent for the railroad company to grant to another, having capacity to engage in the business, the right to use such poles and wires for the purpose of general telegraphy, and the right so transferable may be exclusive or partial as the parties may agree.
But when the right transferred is partial only, as in the case before us, and the consideration is so mixed and modified by rights and privileges reserved by the grantor that it would be unreasonable to suppose that the grant would have been made without the reservations, while in fact and in law, the rights and privileges so reserved cannot be exercised or en joyed by the railroad company for want of capacity to exercise or enjoy them, a court of equity will not by injunction or otherwise enforce the specific performance of the contract. In such case, where the benefit of the contract cannot be realized according to its terms and the expectations of the parties, *32 equity will remit a party who seeks redress for a breach of the contract to such remedies as may be asserted in courts of law.

Judgment reversed and petition dismissed.

White, J., concurred in the judgment on the ground stated in the second proposition of the syllabus.